Dennis James SKILLICORN, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 81919.

Supreme Court of Missouri,
En Banc.

June 13, 2000.

Rehearing Denied Aug. 1, 2000.

Melinda K. Pendergraph, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

Dennis Skillicorn appeals the overruling of a Rule 29.15 motion to vacate his conviction and death sentence. We have jurisdiction. Standing Order, June 16, 1988 (effective July 1, 1988). Skillicorn's conviction was affirmed by this Court on direct appeal. *See State v. Skillicorn,* 944 S.W.2d 877 (Mo. banc 1997). We affirm the judgment of the motion court.

### Factual Background and History[1]

In January 1996, a jury found Skillicorn guilty of first-degree murder for his role in

---

1. For a fuller account of the facts, *see Skilli-* *corn,* 944 S.W.2d at 882–83.

the execution-style killing of Richard Drummond on August 24, 1994. The jury recommended the death penalty. On March 18, 1996, the court sentenced Skillicorn to death for his role in the murder. Pursuant to Rule 29.15, Skillicorn timely filed a *pro se* motion for post-conviction relief. After the motion court appointed counsel for Skillicorn, an amended motion was filed. The court held an evidentiary hearing, including live and deposition testimony. On June 21, 1999, the motion court issued its findings of fact and conclusions of law overruling Skillicorn's motion. This appeal followed.

## Skillicorn's Claims

Skillicorn raises eight points on appeal.

(1) Skillicorn argues his trial counsel was ineffective for failing to investigate and present available evidence during the penalty phase regarding his good character, conduct, and habits at the Salvation Army Adult Rehabilitation Center and that this failure prejudiced him.

(2) Skillicorn argues he was prejudiced by his trial counsel's failure to put on penalty phase evidence of traumatic events in Skillicorn's childhood, his history of chemical abuse and dependency, and of his submissive personality, which allowed others to exercise dominion over him.

(3) Skillicorn believes he was prejudiced by his trial counsel's failure to enter into evidence during the penalty phase jail records from Clay County indicating that Skillicorn behaved well while incarcerated and that he displayed no violent tendencies.

(4) Skillicorn claims he was prejudiced by trial counsel's failure to obtain hearsay evidence from a co-defendant's girlfriend that he claims would have been admissible under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and that such evidence would have provided mitigating facts on the issue of deliberation.

(5) Skillicorn argues he was prejudiced by trial counsel's failure to supply this Court with the mental health records of his co-defendant because the records could have been helpful in establishing Skillicorn's defense that his co-defendant exerted dominance over him and that his participation in the murder was minimal.

(6) Skillicorn maintains he was prejudiced by his trial counsel's failure to effectively address evidence showing that Skillicorn was aware that his co-defendant did not have a rope when counsel had earlier attempted to argue that the co-defendant would merely tie the victim up instead of murdering him.

(7) Skillicorn alleges his appellate counsel was ineffective for not raising the issue of unadjudicated bad acts on appeal and, instead, raising less meritorious claims.

(8) Skillicorn maintains the motion court violated his constitutional rights by adopting the findings of fact and conclusions of law prepared by the state without any independent review of the findings and conclusions.

## Our Standard of Review

We review the claims of Skillicorn for the limited purpose of determining whether or not the motion court clearly erred in making its findings of fact and conclusions of law. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998), Rule 29.15(k). In order to prove that his counsel was ineffective, a movant must show that counsel's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney" and that movant was thereby prejudiced. *Hall*, 982 S.W.2d at 680 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.* Moreover, this Court presumes that counsel acted professionally in making decisions and that any chal-

lenged action was a part of counsel's sound trial strategy. *Id.* We now turn to Skillicorn's eight claims that are listed above.

### (1) Counsel's Failure to Introduce Evidence of Skillicorn's Behavior at the Salvation Army Adult Rehabilitation Center

■ Skillicorn first claims that he was prejudiced by the failure of his trial counsel to introduce evidence in the penalty phase of his good behavior while he was receiving chemical dependency treatment at the Salvation Army Adult Rehabilitation Center in Kansas City, Missouri. Skillicorn believes that this failure prejudiced him because the evidence would have portrayed him in a positive light and may have served as mitigating evidence in the assessment of punishment. Further, Skillicorn argues that the evidence would have shown that his codefendant, Allen Nicklasson, exercised his will over him, further mitigating his role in the murder of Richard Drummond.

After the post-conviction proceeding, the court found Skillicorn's attorney had access to the Salvation Army records and had spoken to the potential witnesses.[2] The court found that the information the witnesses would have presented would not have been persuasive or helpful, that Skillicorn could not overcome the presumption that it was a part of counsel's trial strategy not to call the witnesses, and that counsel was not ineffective.

Skillicorn argues that counsel's failure to explore these critical issues was not a matter of trial strategy. Instead, he asserts that counsel was professionally deficient and this deficiency prejudiced him, citing a

number of federal cases to support this argument. None of these cases assist him. In *Chambers v. Armontrout,* 907 F.2d 825 (8th Cir.1990), the court determined that counsel was ineffective for failing to contact a witness who would have provided defendant's "only possible, indeed, his only reasonable, defense to the death penalty" and that this prejudiced the defendant. *Id.* at 830–32.[3] In *Mauldin v. Wainwright,* 723 F.2d 799 (11th Cir.1984),[4] the court found that counsel was ineffective for failing to conduct a reasonable investigation into the defense's sole theory of the case, that defendant suffered from insanity due to alcohol abuse. *Id.* at 800. Even though defendant had been hospitalized for the addiction, counsel did not consult a mental health expert on the issue, instead choosing to rely on the statements of the defendant, his wife, and his mother. *Id.* In *Loyd v. Whitley,* 977 F.2d 149 (5th Cir. 1992), the court noted that even though defendant's sanity was a "critical issue," only minimal attempts were made to procure independent evidence on the issue. *Id.* at 156–57. Further, the court determined that no strategic decision was made by the attorneys as to the sanity issue and that this failure prejudiced defendant. *Id.* at 157–58, 160. In *Moore v. Johnson,* 194 F.3d 586 (5th Cir.1999), the court held that counsel was ineffective for failing to investigate the upbringing and background of the defendant and that such failure prejudiced the defendant. *Id.* at 617, 621. Finally, in *Collier v. Turpin,* 177 F.3d 1184 (11th Cir.1999), the court determined that counsel was ineffective for portraying only a "hollow shell" of the defendant in the sentencing phase instead of developing evidence that would have shown positive as-

---

**2.** The three witnesses are Jerry Richards, Raymond Briggs, and Michael Sommers. Only Richards denies having anyone ever speak to him about Skillicorn. Sommers recalled two attorneys speaking to him about Skillicom while Briggs recalled two investigators doing the same.

**3.** The failure occurred in the second trial of the defendant, which proceeded in a similar

fashion to the first with the exception that the key defense witness did not testify in the second, 907 F.2d at 828.

**4.** This case was decided before the United States Supreme Court decided *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

pects of defendant's life. Those positive aspects would have included that he was a hard-working family man who suffered from diabetes and was unemployed. Defense counsel only explored issues of defendant's truth and veracity, indicating that counsel knew little of the defendant. *Id.* at 1201–02.

All of these cases are clearly distinguishable from the present case. Here, during the penalty phase, Skillicorn's attorneys did put on mitigating evidence developing a fairly comprehensive portrait of the defendant. The first to testify was Sabri Esmahan, a jailer with the Clay County sheriff's department who had daily contact with Skillicorn. Esmahan testified that neither he nor any other guard had any problems with Skillicorn. Skillicorn always complied with the directives of the jailers, was quiet, went about his own business, and Esmahan was unaware of any conduct violations by Skillicorn. Additionally, Skillicorn was not violent toward fellow prisoners. He went to Esmahan with a problem that he and another prisoner were having and the situation was resolved peacefully.

After Esmahan's testimony, the defense presented more mitigation evidence by reading into evidence the deposition of Special Agent Arthur McOmber of the Federal Bureau of Investigation (FBI). McOmber testified about a conversation he had with Skillicorn's codefendant, Allen Nicklasson. Nicklasson claimed that he just "snapped" when walking Richard Drummond into the woods, that he was angered by Drummond's failure to try to escape, and that his anger rose until Nicklasson decided that he had to shoot Drummond.

The final mitigation evidence was the testimony of Linda Daniels, Skillicorn's older sister. She testified that their moth-

er died from cancer when Skillicorn was only eight years old. Skillicorn's father raised him from that point on with some assistance from his older sisters. She maintained a close relationship with her brother, even while he was imprisoned on another murder conviction. Daniels testified that she never saw her brother display any violent tendencies toward anyone inside or outside the family. Despite all that her brother had done, Daniels still loved Skillicorn.

■ The depositions of the Salvation Army employees add little to this picture of Skillicorn. Skillicorn's trial counsel reviewed the defendant's Salvation Army record, looking for additional mitigation evidence. Combined, the testimonies of Jerry Richards, Michael Sommer, and Major Raymond Briggs demonstrate that Skillicorn was one of the finest workers in the treatment program, that he was a model resident, created no problems, often volunteered to help, did not display violent tendencies, was compliant and respectful. Much of this testimony is similar to that of Esmahan and Daniels. Counsel is not ineffective for not putting on cumulative evidence. *State v. Johnston*, 957 S.W.2d 734, 755 (Mo. banc 1997). The defendant cannot overcome the presumption that this was sound trial strategy on the part of counsel. *Id.* at 756.

■ In any case, Skillicorn cannot demonstrate that he suffered any prejudice from counsel's actions. In the penalty phase, the jury found the following aggravating circumstances listed in section 565.032 RSMo:[5] In 1980, Skillicorn was convicted of murder in the second degree,[6] section 565.032.2(1); Richard Drummond was killed while Skillicorn and his co-defendants were in the process of kidnapping him, section 565.032.2(11); and finally, Drummond was murdered while Skillicorn

---

**5.** All statutory, citations are to RSMo 1994 unless otherwise noted.

**6.** *See State v. Skillicorn*, 635 S.W.2d 82 (Mo. App.1982). Additionally, Skillicorn twice pre-

viously entered a plea of guilt or an *Alford* plea to charges of burglary in the second degree.

and the others were in the process of robbing him. *Id.* The evidence supported all of these aggravating circumstances that indicated the death penalty was an appropriate punishment for Skillicorn. *Skillicorn*, 944 S.W.2d at 898–99.

In addition to the statutory aggravating circumstances, the jury heard an audio tape of Skillicorn's confession to the FBI in San Diego, California. In the confession, he not only talked about his role in the murder of Richard Drummond, but also discussed what he and Nicklasson did as they fled Missouri on a journey southwest. Besides committing a number of house burglaries and attempting to steal a purse from a woman in a grocery store in California, Skillicorn discussed his role in the murders of a husband and wife in Arizona and a woman in a diner in Mexico.

In Arizona, Skillicorn and Nicklasson's car, the Dodge Intrepid stolen from Richard Drummond, became stuck in the sand. The two men approached the house of Joseph and Charlene Babcock. As in the instant case, Mr. and Mrs. Babcock offered assistance to Skillicorn and Nicklasson; and, as here, they were murdered. After Mr. Babcock attempted unsuccessfully to pull Mr. Drummond's company car out of the sand, Nicklasson shot and killed him. Skillicorn and Nicklasson then returned to the Babcock home in Mr. Babcock's truck, where Nicklasson killed Mrs. Babcock in a similar fashion.

Later, while in Mexico, Skillicorn pulled his handgun on a woman operating a diner where the two men were eating. Unfortunately, the woman did not understand Skillicorn's demands for money. Nicklasson then shot and killed the woman. After returning to the United States, Skillicorn and Nicklasson were captured.

Skillicorn clearly cannot demonstrate any prejudice in light of the aggravating evidence against him. Skillicorn's prior murder conviction, and his conduct in the kidnapping, robbery, and murder of Richard Drummond all undercut his claim. His subsequent conduct in the company of Nicklasson further buttresses this conclusion. Even if trial counsel was ineffective, Skillicorn cannot demonstrate any prejudice from counsel's alleged shortcomings. *Hall*, 982 S.W.2d at 680. The motion court did not clearly err in making its findings of fact and conclusions of law on this point. Counsel was not ineffective.

### (2) Counsel's Failure to Present Evidence Regarding Skillicorn's Childhood, History of Chemical Dependency, and Skillicorn's Dependent Personality

For his second point, Skillicorn argues that his counsel was ineffective for not presenting evidence regarding his childhood and upbringing, his history of drug and alcohol abuse and addiction, and his personality, which allowed his co-defendant Allen Nicklasson to exercise influence over him. He believes that this prejudiced him in the penalty phase of the trial because the evidence would have provided mitigating factors supporting a sentence of life without parole.

The trial court, in its findings of fact and conclusions of law, determined that counsel was not ineffective for not presenting testimony in the penalty phase similar to that given by Dr. William Holcomb in the post-conviction proceeding. The court determined that Skillicorn's voluntary intoxication would not negate the required culpable mental state for the crime. *State v. Nicklasson*, 967 S.W.2d 596, 617 (Mo. banc 1998). Moreover, the testimony would have been cumulative to testimony offered by Dr. John Spiridigliozzi had he testified,[7]

---

7. In the penalty phase of the trial, Dr. Spiridigliozzi was prepared to testify, carrying with him Skillicorn's file. The state objected, desiring to review the file because it had not been turned over in discovery. The trial court ruled that defense counsel had to turn over the file for review by the state or Dr. Spiridigliozzi could not testify. Since the defendant had put his mental condition at issue, any psychologist-patient privilege was waived.

and, in any case, Dr. Holcomb's testimony was supported by scant evidence and was unpersuasive.

First, as discussed above, evidence regarding Skillicorn's upbringing and personality was before the jury. Skillicorn's sister testified that their mother died when he was only eight years of age, that his father had a difficult time working through the loss, and that his older sisters helped raise Skillicorn. Evidence regarding Skillicorn's submissive personality was also before the jury. A jailer with the Clay County sheriff's department testified that Skillicorn was a model prisoner. He was compliant with the requests of all guards, going about his own business in a quiet way to avoid conflict.

Skillicorn suggests that counsel was deficient for not further exploring his background, claiming that his father turned to alcohol abuse to deal with the loss of Skillicorn's mother. He points to *Illinois v. Perez*, 148 Ill.2d 168, 170 Ill.Dec. 304, 592 N.E.2d 984 (1992), and *Louisiana v. Sullivan*, 596 So.2d 177 (La.1992), *rev'd on other grounds, Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), as indicating the failure to investigate defendant's background, where there is evidence of abuse, is grounds for vacating a sentence of death. Those cases are distinguishable from the present one. Here, there is no evidence that Skillicorn's father abused him in any way, while in those cases the defendants grew up in either "an abusive, alcoholic, often brutal environment," *Sullivan*, 596 So.2d at 191, or in a home where the father sold drugs, brought them into the home, abused the children in an alcoholic rage, and routinely whipped the children, often using appliance cords, for defying him, *Perez*, 170 Ill.Dec. 304, 592 N.E.2d at 989.

■ At the post-conviction proceeding, Dr. Holcomb testified that on the day before the offense, Skillicorn consumed large quantities of beer and schnapps while also smoking marijuana and ingesting Valium and methamphetamine or "crank." Evidence of substance abuse is inadmissible to negate the required mental state for first degree murder. *Nicklasson*, 967 S.W.2d at 617. Even if offered as mitigating evidence, counsel cannot be ineffective for not putting such evidence on, as many jurors find that chemical abuse is an *aggravating* factor engendering no sympathy for the defendant. *State v. Kenley*, 952 S.W.2d 250, 262 (Mo. banc 1997).

■ Dr. Holcomb's other testimony, that Skillicorn had a difficult childhood after the loss of his mother and that he was a follower who did well in institutional settings, is similar to that offered by his sister and a jailer from the Clay County sheriff's department. Counsel is not ineffective for not presenting cumulative evidence. *Johnston*, 957 S.W.2d at 755. In any case, there is no prejudice, as the evidence, at best, merely shows that Skillicorn is a follower who has a history of allowing his co-defendants to kill innocent persons while he remains idly by having already stolen items of value from them. Moreover, the submissive nature of Skillicorn is not without contradiction. Tim DeGraffenreid, who was present with Skillicorn and Nicklasson when Drummond was murdered, stated that "Dennis [Skillicorn] told me to go tell Allen [Nicklasson] to put the clip in his [Drummond's] head."

Additionally, any suggestion that Skillicorn somehow was under a kind of "duress" in the murder of Drummond is inappropriate. This is also true of suggestions trying to minimize Skillicorn's role in planning the murder—Skillicorn told Drummond that they were going to have to "lose" him in the woods even though Skillicorn, Nicklasson, and DeGraffenreid had no rope to tie Drummond up with.

The motion court did not clearly err in making its findings of fact and conclusions

*Skillicorn*, 944 S.W.2d at 897. It was, therefore, proper for the court to order the materi-

al turned over as it was not protected by this or any other privilege. *Id.* at 898.

of law on this issue. Counsel was not ineffective and Skillicorn was not prejudiced. *Hall*, 982 S.W.2d at 680.

### (3) Counsel's Failure to Investigate Skillicorn's Clay County Jail Records

For his next point, Skillicorn argues that his counsel was ineffective for not introducing records from the Clay County jail indicating that he was a "model prisoner" and did not behave violently while incarcerated. Counsel did not obtain these records from the jail. The postconviction court determined that the evidence in the file was cumulative to other evidence and that the information in the file did not aid Skillicorn.

As noted above, one of Skillicorn's jailers, Sabri Esmahan, who had daily contact with him, testified on his behalf during the penalty phase. Esmahan testified that Skillicorn was nonviolent, adapted well to incarceration, and had no problems while in custody. Counsel's stated purpose for having Esmahan testify was to show that Skillicorn would adjust well to incarceration if sentenced to life in prison and would not be a threat to others. Skillicorn's Clay County jail file has no information that better illuminates Skillicorn's behavior than the testimony given by Sabri Esmahan—the only recorded information in the file details Skillicorn's showering habits and minor conduct violations by Skillicorn while in custody. Counsel is not ineffective for not putting on cumulative evidence. *Johnston*, 957 S.W.2d at 755.

The post-conviction court did not clearly err in making its findings of fact and conclusions of law as to this issue. Counsel was not ineffective for not presenting redundant evidence. *Hall*, 982 S.W.2d at 680; *Johnston*, 957 S.W.2d at 755.

### (4) Counsel's Failure to Elicit Certain Testimony from Annie Wyatt

Skillicorn next alleges that his counsel was ineffective for not eliciting testimony from Annie Wyatt that he claims would have supported his defense of lack of deliberation and because the statement would have served as mitigating evidence in the penalty phase. The testimony at issue was a hearsay declaration made by Skillicorn's co-defendant, Allen Nicklasson, to Nicklasson's girlfriend, Wyatt. A similar statement made by Nicklasson to Special Agent McOmber of the FBI was excluded as hearsay. Applying the test enunciated in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), this Court affirmed the decision to exclude the testimony on direct appeal. *Skillicorn*, 944 S.W.2d at 884–85.

After the post-conviction proceeding, the motion court found that counsel was not ineffective because the proposed testimony from Wyatt was likewise inadmissible, as it, too, failed the *Chambers* test. Additionally, the court found that the statement did not really mention Skillicorn's involvement in the murder.

The crux of Wyatt's testimony at the post-conviction hearing centered around whether Nicklasson ever made a statement indicating that Nicklasson, Skillicorn, and DeGraffenreid had a plan to kill Richard Drummond. According to Wyatt, Nicklasson denied that there was a plan to kill Drummond. These statements made to Wyatt are hearsay because they are offered "to prove the truth of the matter asserted," i.e., that, if believed, the statement would tend to negate the deliberation element of murder in the first degree as defined in section 565.020. *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997).

Skillicorn believes that the statement, though hearsay, would still be admissible under the *Chambers* test. In *Chambers*, the United States Supreme Court enunciated a three-prong test: (1) The statement is made spontaneously to a close acquaintance shortly after the event. (2) The statement is corroborated by other evidence in the case. (3) Each statement is "in a very real sense self-incriminatory"

and clearly against the penal interest of the declarant. 410 U.S. at 300–01, 93 S.Ct. 1038, The statement by Nicklasson to Wyatt clearly fails this three-prong test.

As to prong one, the statement was made the same day of the murder. It was made by Nicklasson to his girlfriend with whom he lived in Blue Springs, Missouri. Although the motion court found that the statement was not made spontaneously to a close acquaintance, we disagree. There is no evidence to suggest that the statement was coerced from Nicklasson, nor a rehearsed statement he planned to make. The statement was made spontaneously and to a close acquaintance, thus satisfying the first prong of the *Chambers* test. 410 U.S. at 300, 93 S.Ct. 1038. That said, the motion court did not err on the issue of admissibility, as Nicklasson's statement fails prongs two and three of the test.

Prong two requires that the statement be corroborated by other evidence in the case. The other evidence in the case actually vitiates Nicklasson's statement. At trial, the state showed that Skillicorn intended to "lose" Richard Drummond in the woods and that Nicklasson was going to "do something to this guy." *Skillicorn,* 944 S.W.2d at 882. As Nicklasson led Drummond into the woods, it was apparent that Nicklasson had no rope to tie Drummond up with but did have a loaded handgun, the same weapon ultimately used to murder Drummond in an execution-style fashion. *Id.* at 883. Thus, Nicklasson's statement was not corroborated by other evidence in the case. *Chambers,* 410 U.S. at 300, 93 S.Ct. 1038.

Likewise, Nicklasson's statement fails the third prong of *Chambers.* While the statement is incriminating in the sense that Nicklasson admits to killing Drummond, it is also exculpatory because, like his statement to the FBI, which was excluded at trial, it tries to minimize the deliberate nature of the crime. Whether Nicklasson actually shot and killed Drummond was never truly an issue in Skillicorn's case—he admitted as much in a

confession to Special Agent McOmber of the FBI. Nicklasson's statement does not incriminate himself or Skillicorn as to deliberation, which was an issue at trial. Thus, the statement fails the third prong of *Chambers.* 410 U.S. at 300–01, 93 S.Ct. 1038.

Counsel is not ineffective for failing to offer inadmissible hearsay. *State v. Williams,* 936 S.W.2d 828, 833 (Mo.App. 1996). As to this point, the trial court did not clearly err in making its findings of fact and conclusions of law. *Hall,* 982 S.W.2d at 680.

### (5) Counsel's Failure to Preserve Co–Defendant's Mental Health Records for Review

In his fifth point, Skillicorn argues that trial counsel was ineffective for failing to preserve the mental health records of co-defendant Allen Nicklasson for review by this Court. Further, he alleges that his appellate counsel was also ineffective for failing to request that this Court view the exhibits. Skillicorn states that both trial and appellate counsel believed that the issue of Nicklasson's mental health records was meritorious.

The motion court found that, in his direct appeal, this Court determined that Skillicorn had no right to the records and that "preserving the record" would not have assisted Skillicorn. Skillicorn rightly points out that this Court did not reach the issue of whether he had a right to the records in his direct appeal. Instead, we determined that Skillicorn received what he wanted, i.e., an *in camera* inspection of the documents. *Skillicorn,* 944 S.W.2d at 885. The trial court found that the contents of Nicklasson's mental health records were irrelevant to Skillicorn's defense. *Id.* Taking notice of the misstatement by the motion court, we still agree with the motion court that counsel was not ineffective.

Skillicorn is correct in pointing out that appellate courts may review documents examined by the trial court, *State v. Parker,*

886 S.W.2d 908, 917 (Mo. banc 1994) (Court inspected disciplinary records of officer), and that this Court has even ordered a court of appeal to conduct such an investigation, *State v. Newton*, 963 S.W.2d 295, 297 (Mo.App.1997). Neither of these cases, however, suggests that a review would be necessary or even helpful under the present set of facts.

In *Parker,* the defendant made a materiality showing· regarding a police officer's disciplinary record as it related to how he handled the complaints of the defendant's victim and whether it contained any exculpatory information under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Parker,* 886 S.W.2d at 917. Likewise, *Newton* is also distinguishable, as the mental health records at issue in the case pertained to a witness for the state who apparently had a history of drug abuse, mental illness, and hallucinations. *State v. Newton*, 925 S.W.2d 468, 471–72 (Mo.App.1996).

In the present case, counsel sought to use Nicklasson's mental health records for the purpose of providing more information about the submissive nature of Skillicorn's personality in an attempt to minimize Skillicorn's role in the murder. Counsel wanted to further illustrate the defense theory that Skillicorn was dominated by the more aggressive Nicklasson. The trial court reviewed the file *in camera* and determined that there was no relevant information in the file. Additionally, Skillicorn's sister and a jailer in Clay County had already testified about Skillicorn's personality, that he was non-violent, submissive to authority, and quiet.

■ An incomplete record on appeal does not necessarily warrant reversal, as relief is only appropriate if the appellant can demonstrate that due diligence was employed in an attempt to correct the shortcomings and that the incomplete nature of the record prejudiced him. *State v. Middleton,* 995 S.W.2d 443, 466 (Mo. banc 1999). Skillicorn cannot demonstrate any prejudice against him. At best, the

evidence in Nicklasson's file would add to the conclusion that Skillicorn, with his submissive personality, again paired himself up with a more dominant, aggressive individual and then participated in a murder in order to obtain some desired property. This view of Skillicorn was clearly presented in the guilt phase of Skillicorn's trial, for example, Skillicorn's statement to the victim that they were going to have to "lose" him while Nicklasson actually carried out the killing, leaving Skillicorn, who had just taken the victim's wallet and cash, behind in the victim's car. *Skillicorn,* 944 S.W.2d at 882–83. This aspect of Skillicorn's behavior was even more prevalent in the penalty phase of his trial as detailed above in section (1).

Although the motion court erroneously stated that this Court, in Skillicorn's direct appeal, determined that he had no right to Nicklasson's mental health records, it is equally apparent that the motion court did not clearly err. At trial, the court determined that the information in Nicklasson's file was irrelevant. *Skillicorn,* 944 S.W.2d at 885. At best, the information would have little or no probative value in light of the evidence adduced by the state. All things considered, trial and appellate counsel cannot be said to be ineffective, and it is plain that Skillicorn cannot demonstrate any prejudice since there is no reason to believe the verdict and sentence would have been any different because of the strong evidence presented against him in both the guilt and penalty phases, *Hall,* 982 S.W.2d at 680. Moreover, Skillicorn has not produced sufficient evidence to overcome the presumption that counsel was effective. *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996).

### (6) Counsel's Failure to Address the Lack of a Rope in his Closing Argument

■ Skillicorn, for his sixth point on appeal, argues that his trial counsel was ineffective for arguing during the guilt phase that Skillicorn and Nicklasson in-

tended to tie up Richard Drummond and leave him in the woods but at the same time not adequately confronting the fact that they had no rope.

Part of Skillicorn's defense theory at trial was that none of the men intended to kill Drummond but only to tie him up. Instead, co-defendant Allen Nicklasson "snapped" and decided on his own to kill him. However, Skillicorn was aware that Nicklasson had no rope. After Nicklasson's statement about "snapping" was properly excluded as hearsay, Skillicorn's counsel was left in the unenviable position of having a client who admitted that the men had to "lose" the victim in the woods and that his co-defendant had no rope to disable the victim with but did have a loaded handgun. Counsel suggested that Nicklasson perhaps intended to use his shoestrings to tie up Drummond and generally avoided mentioning the rope in his closing argument.

The motion court rejected this claim. In its findings of fact and conclusions of law, the court noted that Skillicorn was unable to show how counsel could have effectively "explain[ed] away" the inconsistencies in his own confession. Further, the court concluded that trial counsel did make a strong and thorough closing argument. We agree with the motion court.

On this point, counsel was clearly not ineffective. With the inadmissibility of Nicklasson's statement, counsel saw an important part of his defense strategy go by the wayside. Skillicorn admitted that he knew Nicklasson had no rope. Nicklasson, however, did have a handgun. Counsel proffered a possible alternative to the rope by mentioning the shoestrings. In his closing argument, counsel appears to have downplayed the rope issue after the prosecution had driven the issue home to the jury. Skillicorn cannot show that counsel's minimization of the rope issue was not trial strategy. *Hall*, 982 S.W.2d at 680. Counsel was not ineffective. The post-conviction court did not clearly err in making its findings of fact and conclusions of law. *Id.*

## (7) Appellate Counsel's Failure to Raise the Issue of Skillicorn's Unadjudicated Bad Acts

For his penultimate point, Skillicorn argues that his appellate counsel was ineffective for failing to raise the issue of his unadjudicated bad acts on appeal while at the same time pursuing weaker claims consistently rejected by this Court even though the unadjudicated bad acts issue was preserved for appeal. Skillicorn asserts that this issue was perfected by counsel's objection and its inclusion in his motion for new trial. Appellate counsel, however, did not raise the claim on appeal, as she believed the evidence to be admissible.

Skillicorn's claim relates to the evidence of the various crimes that he and Nicklasson committed as they fled Kansas City to the southwest. It included the murders of Joseph and Charlene Babcock in Arizona, an attempted purse snatching in California, and the murder of a woman in a diner in Mexico. The motion court determined that the evidence was properly admissible and that counsel was not ineffective for raising a meritless claim to this Court on direct appeal. We agree with the motion court.

The decision to admit evidence of unadjudicated bad acts during the penalty phase rests within the sound discretion of the trial court. *State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999). Such material is of assistance to the jury when the jury must assess the punishment of the defendant. *Id.* This discretion is not unfettered, as the state must reveal to the defendant the aggravating circumstances that it intends to submit to the jury for consideration. *State v. Debler*, 856 S.W.2d 641, 657 (Mo. banc 1993). In *Debler*, this Court found that the state had to give notice to the defendant by the instruction conference prior to the penalty phase as to which aggravating circumstances it intended to submit to the jury. *Id.*

Here, Skillicorn had abundant notice of the aggravating factors. The evidence de-

tailing Skillicorn's unadjudicated bad acts came from Skillicorn's own confession to Special Agent McOmber of the FBI. As to the statutory aggravating circumstances, they were first disclosed in November of 1994. The state, in response to discovery requests, indicated that it planned to call witnesses from both Arizona and California regarding these unadjudicated crimes as far back as July of 1995. Perhaps most tellingly, the defense filed a motion *in limine* to keep these unadjudicated bad acts out of the trial completely on January 18, 1996. In its response filed four days later, the state noted that "this evidence, however, is clearly relevant in the penalty phase."

After the jury returned its guilty verdict against Skillicorn, the trial court held a conference with all parties in chambers. At the conference, the state discussed all of the aggravating circumstances including the unadjudicated bad acts. Defendant objected to all aggravating evidence but the objection was overruled. After returning to open court, the trial court then read the first instructions to the jury in the penalty phase. Since this evidence was helpful to the jurors in making their determination, and the defendant had notice of it, the evidence was properly before the jury. *Winfield,* 5 S.W.3d at 515; *Debler,* 856 S.W.2d at 657.

Appellate counsel acted properly and made a reasonable, strategic decision in not presenting this claim on appeal. Skillicorn cannot overcome this presumption. *Hall,* 982 S.W.2d at 680. The motion court's findings of fact and conclusions of law are not clearly erroneous. *Id.*

### (8) The Motion Court Erred by Adopting the State's Findings of Fact and Conclusions of Law

■ In his eighth and final point on appeal, Skillicorn argues that the motion court clearly erred when it adopted, in an almost verbatim fashion, the findings of fact and conclusions of law written and presented to it by the state, and that this action violated his constitutional rights to due process. The state suggests that Skillicorn is procedurally barred from seeking review of this issue because he did not raise it in his motion to reconsider filed with the motion court after the issuance of its findings of fact and conclusions of law and, thus, Skillicorn failed to raise this constitutional question at the earliest point possible. *Kenley,* 952 S.W.2d at 260. A "motion" under Rule 75.01 is unnecessary to preserve the alleged error for appellate review in postconviction cases.

Rule 29.15 is subject to Missouri's rules of civil procedure. Rule 29.15(a). The post-conviction court sits without a jury; as such, a party need not file a motion for new trial to preserve error. Rule 73,01(d).[8] Nor does Rule 75.01 impose such a requirement on movants as it does not provide for the filing of a motion.[9] Skillicorn's claim is not barred. This being said, we find no reversible error presented by Skillicorn in his claim.

■ Skillicorn points out that, with the exception of some procedural information added by the motion court, the court's findings of fact and conclusions of law are essentially the same as the state's proposed findings of fact and conclusions of law offered to the motion court. This has become a common practice in Missouri courtrooms and raises no constitutional problems so long as the court, after independent reflection, concurs with the contents of the proposed findings and conclusions. *Kenley,* 952 S.W.2d at 261. Still, to be valid, the proposed findings of fact and conclusions of law must be supported by the evidence. *Id.* Though drafted by another, this process makes the findings of

---

8. In contrast, to preserve error in a jury-tried case, allegations of error must be included in a motion for new trial. Rule 78.07(a)(1).

9. Rule 75.01 merely states that the trial court retains jurisdiction over the judgment "during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time."

fact and conclusions of law those of the court. *Id.*

In the present case, the evidence clearly supports the findings of fact and conclusions of law made by the motion court. As noted above in section (5), the motion court did misstate this Court's holding in Skillicorn's direct appeal. Even so, we determined that counsel was not ineffective and that Skillicorn was in no way prejudiced. As a whole, the findings of fact and conclusions of law are accurate, both legally and factually. In no way do they violate any constitutional due process rights guaranteed to Skillicorn.

### Conclusion

For all of the above reasons, we conclude that the motion court did not clearly err in making its findings of fact and conclusions of law. Skillicorn is unable to demonstrate that his counsel, either at the trial or appellate level, was ineffective, nor can he demonstrate any prejudice against him. *Hall,* 982 S.W.2d at 680. The judgment of the motion court is affirmed.

All concur.