Russell Earl BUCKLEW, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 82391.

Supreme Court of Missouri,
En Banc.

Jan. 31, 2001.

Rehearing Denied March 20, 2001.

Rebecca L. Kurz, Office of the Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Adriane Crouse, John M. Morris, Assistant Attorneys General, Jefferson City, for Respondent.

BENTON, Judge.

A jury convicted Russell Earl Bucklew of first-degree murder, kidnapping, burglary, forcible rape, and armed criminal action. The trial court sentenced him to death for the first-degree murder, as well as 30 years for kidnapping, 30 years for burglary, 30 years for rape, and 5 years for armed criminal action. The convictions and sentences were affirmed. *State v. Bucklew*, 973 S.W.2d 83 (Mo. banc 1998), *cert. denied*, 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999).

Bucklew then filed for post-conviction relief under Rule 29.15, which was denied. On appeal, he raises six points of error. This court has jurisdiction. *Mo. Const. art. V, section 10; Order of June 16, 1988.* Affirmed.

I.

This Court reviews the facts in the light most favorable to the verdict. *State v. Shurn*, 866 S.W.2d 447, 455 (Mo. banc

1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

Russell Bucklew and Stephanie Ray lived together in a trailer in Cape Girardeau County. They broke up on Valentine's Day, 1996. Bucklew then moved into his parents' home.

On March 6, Bucklew returned to the trailer, where he discovered Michael Sanders, the eventual victim. Concluding that Sanders and Ray were romantically involved, Bucklew put a knife to Sanders' throat and threatened to kill him if he came back to the trailer. Later that evening, Bucklew returned to the trailer, found Ray alone, threatened her with a knife, cut her jaw, and punched her in the face. Ray reported the attack to the police.

Bucklew called Ray at work on March 7. He again promised to kill her, Sanders, and her children if she and Sanders were together again.

During the night of March 20–21, Bucklew stole his nephew's car. He also took two pistols, two sets of handcuffs, and a roll of duct tape. He left a note asking his family not to report the theft of the car to the police.

The next day, Bucklew followed Ray as she left work and ran errands, ultimately discovering that she was living with Sanders. He then waited some period of time before knocking on the door of the trailer. One of Sanders' sons opened the door. When Sanders himself saw Bucklew through the window, Sanders took the children to a back bedroom and grabbed a shotgun. Bucklew entered the trailer with a pistol in each hand. When Sanders emerged into the hallway carrying the shotgun, Bucklew yelled "get down," and began shooting at Sanders. Two bullets struck Sanders, one entering his chest and piercing his lung.

Bucklew then aimed the gun at Sanders' head. Seeing Sanders' six-year-old, Bucklew instead fired at him, but missed.

Ray stepped between Bucklew and Sanders, now slumped against the wall

holding his chest and bleeding to death. Bucklew told Ray to drop to her knees. She hesitated, so he struck her in the face with a pistol. He then handcuffed her hands behind her back, dragged her to the car, and they drove away.

During the drive, Bucklew demanded sex. When she did not perform every act demanded, Bucklew raped her in the back seat of the car. After he resumed driving north on Interstate 55, the highway patrol apprehended Bucklew, but not before a trooper and Bucklew were wounded.

## II.

██ Bucklew claims the motion court erred in denying post-conviction relief for ineffective assistance of counsel. To prove ineffectiveness, the defendant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Parker,* 886 S.W.2d 908, 929 (Mo. banc 1994), *cert. denied,* 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). The defendant must prove prejudice, a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Shurn,* 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Reasonable trial strategy is not a ground for ineffective assistance of counsel. *Id.*

Here, the motion court found that counsel was not ineffective, so review is limited to whether the court clearly erred. *Rule 29.15(j); State v. Wise,* 879 S.W.2d 494, 524 (Mo. banc 1994), *cert. denied,* 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). The court's findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, the appellate court definitely believes that a mistake was made. *Parker,* 886 S.W.2d at 929.

### III.

Bucklew first alleges ineffectiveness because his counsel failed to investigate and present testimony from a corrections expert—James Aiken, a private consultant with 20 years experience—to rebut the state's evidence and arguments about future dangerousness. After evaluating Bucklew, Aiken prepared a report, which was admitted by the motion court. In Aiken's opinion, Bucklew would not pose a significant risk of escape from prison, nor a significant risk of harm to other inmates or prison personnel. Aiken would have so testified, fully acknowledging Bucklew's escape from the county jail while awaiting trial.

Defense counsel, however, testified that a "prison adjustment expert" would be susceptible to cross-examination about the frequency of assaults and killings in prison. Aiken's report revealed numerous minor disciplinary infractions and negative comments about Bucklew, which the jury would see only if Aiken testified. Trial counsel was also concerned that Aiken could not testify with any certainty that Bucklew would not escape. Additionally, trial counsel did call a Boone County jailer, who testified that Bucklew had been calm and personally respectful while in that jail for nine months.

Trial counsel's decision not to call a witness is presumed to be trial strategy unless otherwise clearly shown. *State v. Clay*, 975 S.W.2d 121, 143 (Mo. banc 1998), *cert. denied*, 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999). Strategic choices made after thorough investigation are essentially unchallengeable. *State v. Ramsey*, 864 S.W.2d 320, 340 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). To establish ineffectiveness of trial counsel for failing to call a witness, movant must show that the witness could have been located by reasonable investigation, that the witness would testify if called, and that the testimony would provide a viable defense. *Clay*, 975 S.W.2d at 143.

Bucklew did not clearly show that the failure to call Aiken was not trial strategy. In light of the mixed impact of Aiken's testimony, counsel was not ineffective in not calling him as a witness. *Davis v. Executive Director of Department of Corrections*, 100 F.3d 750, 765–66 (10th Cir. 1996), *cert. denied*, 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991). Moreover, Aiken's testimony is cumulative to evidence already presented by the Boone County Jailer. *Skillicorn v. State*, 22 S.W.3d 678, 686 (Mo. banc 2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 630, 148 L.Ed.2d 538 (2000). The motion court did not clearly err in denying postconviction relief for ineffective assistance of counsel.

### IV.

Bucklew next contends that trial counsel were ineffective for failing to call Dr. Michael Gelbort, Ph.D., a clinical psychologist, who was retained prior to trial. During the guilt and penalty phases, Dr. Gelbort would have testified, based on a one-day interview and neuropsychological testing, that Bucklew was not able to form the intent to deliberate.

Dr. Gelbort's findings were summarized—almost verbatim—by Dr. Bruce Harry, M.D., an expert witness who testified during the penalty phase. Dr. Harry did explain Bucklew's mental and physical condition, and his medications. This case is not like *State v. Johnson*, where counsel was ineffective for failing to call a psychiatrist as a witness. 968 S.W.2d 686, 702 (Mo. banc 1998). There, counsel had no strategic reason for not calling the witness, blamed "communication problems," and admitted that she should have requested a brief continuance in order to ensure that the psychiatrist testified. *Id.* at 698.

Dr. Gelbort would also have confirmed that Bucklew has characteristics associated with antisocial personality disorder. Trial counsel was concerned about introducing this point during the guilt phase, and em-

phasizing it by a second witness during the penalty phase.

The governing law on decisions not to call witnesses is set out in Part III above. *Clay*, 975 S.W.2d at 143; *Ramsey*, 864 S.W.2d at 340. The motion court found that Dr. Gelbort's testimony was not persuasive as to guilt, and cumulative as to penalty. These findings are not clearly erroneous. Moreover, Bucklew did not prove a reasonable probability of a different outcome if Dr. Gelbort had testified-in light of the "overwhelming" evidence of guilt. *Bucklew*, 973 S.W.2d at 91.

The motion court's denial of postconviction relief for ineffective assistance of counsel is not clearly erroneous. *State v. Johnston*, 957 S.W.2d 734, 755 (Mo. banc 1997), *cert. denied*, 522 U.S. 1150, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998); *Skillicorn*, 22 S.W.3d at 686.

## V.

◼ Bucklew next contends that the motion court erred in refusing postconviction relief because counsel did not object to certain references to victim impact during closing argument in the penalty phase. The prosecutor argued:

> Some day, ladies and gentlemen, John Michael Sanders and Zachary Sanders will be adults. Now they're seven and five, but some day they'll be adults. And I submit to you that they will want to look back at what happened in April of 1997 in the case where the cold-blooded sociopath gunned down our daddy. Was justice reached? Did the jury in Boone County achieve justice? Did they impose the ultimate punishment for the ultimate crime or did the justice system fail in the case where this man invaded our home and shot our daddy down in front of us? And I don't care how wonderful anybody's grandma or grandpa or aunts and uncles are, nobody can replace a father's love. Nobody is going to give the same rewards for their finger painting just done, that bicycle just learned to ride. This man took their father. And

I'm asking you to make the punishment fit the crime and give him the death penalty.

◼ Victim impact evidence, and related argument about the impact of the crime upon the victim and victim's family, is admissible. *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *State v. Gray*, 887 S.W.2d 369 (Mo. banc 1994), *cert. denied*, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). "The state is permitted to show the victims are individuals whose deaths represent a unique loss to society and to their family and that the victims are not simply 'faceless strangers.'" *Gray*, 887 S.W.2d at 389.

Here, the victims did not request a specific punishment. See *State v. Roll*, 942 S.W.2d 370, 378 (Mo. banc 1997), *cert. denied*, 522 U.S. 954, 118 S.Ct. 378, 139 L.Ed.2d 295 (1997); *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997). The prosecutor's reference to the victims' wishes is indirect, at best. *State v. Worthington*, 8 S.W.3d 83, 89 (Mo. banc 1999), *cert. denied*, 529 U.S. 1116, 120 S.Ct. 1978, 146 L.Ed.2d 807 (2000). An argument for the "ultimate punishment" is a proper closing argument. *State v. Kenley*, 952 S.W.2d 250, 272 (Mo. banc 1997), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986).

Bucklew must show a reasonable probability of a different outcome at trial, assuming successful objections. *State v. Simmons*, 955 S.W.2d 729, 748 (Mo. banc 1997), *cert. denied*, 522 U.S. 1129, 118 S.Ct. 1081, 140 L.Ed.2d 138 (1998). Bucklew has not proven this requirement. The motion court did not clearly err.

## VI.

◼ Bucklew contends his trial counsel was ineffective for failing to object to the prosecutor's argument during the penalty phase closing:

> If you let him off the hook without the death penalty, think about the message you're sending. Think about the message

you're sending if you let him off the hook without the death penalty. You're saying, well, let's see, he took two knives, at least 34 bullets, two guns, handcuffs, duct tape, he stalked this woman, he killed her, or killed Michael Sanders, he raped her, terrorized her, that you, let's not give the death penalty, let's save it for some other crime. Let's save it for some other crime. Ladies and gentlemen, if this crime does not deserve the death penalty, then what would? Who deserves the death penalty if not this sociopathic killer?

■ Bucklew alleges this argument implies personal knowledge by the prosecutor, citing *State v. Storey,* 901 S.W.2d 886 (Mo. banc 1995), *cert. denied,* 528 U.S. 895, 120 S.Ct. 226, 145 L.Ed.2d 189 (1999). There, this Court disapproved the prosecutor's statement that the case was "the most brutal slaying in the history of this county." *Id.* at 900. A prosecutor may not assert personal knowledge of facts in issue, which is essentially unsworn testimony by the prosecutor. *Id.* See also *State v. Roberts,* 948 S.W.2d 577, 594 (Mo. banc 1997), *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998); *State v. Copeland,* 928 S.W.2d 828, 843 (Mo. banc 1996), *cert. denied,* 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997).

■ Here, however, the prosecutor's arguments are not improper. They do not imply special knowledge, but are rhetorical based on the evidence. *Parker,* 941 S.W.2d at 763. Trial counsel is not required to make a non-meritorious objection. *Clay,* 975 S.W.2d at 135. The motion court's denial of postconviction relief was not clear error.

## VII.

■ Bucklew alleges the motion court should have granted postconviction relief for ineffective assistance of counsel, due to trial counsel failing to call five witnesses during the penalty phase: Deanna Bucklew, Ron Bucklew, Mike Walton, John Rhode, and Kimberly Nichols. Ron and Deanna Bucklew and Mike Walton would have testified (as they did before the motion court) about Bucklew's prior good treatment of Stephanie Ray and her children, his deteriorating health, and their opinion that Bucklew was not violent. John Rhode would have said that Bucklew was a good friend, dedicated to his family, and an "honest" person. Kimberly Nichols would have testified that Bucklew was kind to her in high school and when her sister died in an automobile accident.

A decision not to call a witness is presumed to be trial strategy unless clearly shown otherwise. *Clay,* 975 S.W.2d at 143. Strategic choices made after thorough investigation are almost unchallengeable. *Ramsey,* 864 S.W.2d at 340. To establish ineffectiveness of trial counsel for failing to call a witness, movant must show that the witness could have been located by reasonable investigation, that the witness would testify if called, and that the testimony would provide a viable defense. *Clay,* 975 S.W.2d at 143.

The evidence these witnesses would have presented was cumulative to evidence already included by the defense, or harmful to the defense. Cross-examining Ray herself, the defense elicited testimony that Bucklew was good to her and her children. During cross-examination of Ray and Dr. Harry, the defense also described Bucklew's health. And, although Ron and Deanna Bucklew and Mike Walton testified they did not believe Bucklew to be violent, this would have disintegrated on cross-examination about numerous violent acts committed by Bucklew. The testimony of each of these witnesses could have actually harmed Bucklew's case, and he cannot show a reasonable probability of a different result if they had testified.

Similarly, defense counsel presented testimony that Bucklew was a good father by calling his son's mother, Cindy Boyer. In addition, although Rhode would have testified that Bucklew was honest, that opinion would have been negated by cross-exami-

nation about Bucklew's previous convictions for burglary, stealing, grand theft, and felony stealing. Bucklew has not shown a reasonable probability that the result in his case would be different if Rhode testified.

Likewise, although Kimberly Nichols could testify that Bucklew was nice to her, her testimony added little to the evidence in this case, and there is no reasonable probability that the result would have been affected if she had testified.

 "Failing to present cumulative evidence is not ineffective assistance of counsel." *Johnston,* 957 S.W.2d at 755. It was not clearly erroneous for the motion court to deny postconviction relief, based on the failure to call these five witnesses.

### VIII.

Bucklew finally alleges that his trial counsel were ineffective for opening the door to evidence of a prior assault by Bucklew on Stephanie Ray. On defense motion, the trial court initially granted a motion in limine prohibiting evidence about the assault of Ray on March 6. During opening statement, however, defense counsel mentioned background facts about the assault, thereby opening the door to evidence of that assault.

The evidence of the assault on March 6 was admissible. Bucklew's prior misconduct toward Ray is inadmissible to show propensity, but "admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial ... and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). Specifically, evidence is admissible if it tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity of a defendant, or the evidence is otherwise logically and legally relevant. *Id.*

Bucklew's prior assault on Ray is admissible under these exceptions. This evidence showed the defendant's motive and intent to commit the crimes charged. "There may be evidence of a pre-existing relationship between the victim and the defendant prior to the murder that provides a motive for the killing." *Roberts,* 948 S.W.2d at 589. The case Bucklew cites, *State v. Bell,* is irrelevant here, because the evidence of the prior assault is not hearsay. 950 S.W.2d 482 (Mo. banc 1997).

The trial court did not err by admitting admissible evidence, and counsel was not ineffective in mentioning evidence the state can present. The motion court's denial of postconviction relief is not clearly erroneous.

### IX.

This Court affirms the motion court's judgment.

All concur.