Richard Eugene PAXTON,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 27659.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 27, 2006.

Mark A. Grothoff, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Victor J. Melenbrink, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Richard Paxton ("Movant") appeals the denial of his Rule 29.15 [1] motion for post-conviction relief following his conviction by a jury of child molestation in the first degree (§ 566.067.2), for which he was sentenced to twenty years' imprisonment.[2] Movant alleges that his trial counsel was ineffective in failing to question a trial witness about the witness' extrajudicial statements describing a statement made by the victim and, assuming his denial in making such statements, in failing to call three witnesses to impeach him. Finding no clear error by the motion court in denying this motion, we affirm.

### 1) *Factual and Procedural Background*

We affirmed Movant's conviction on his direct appeal. *See State v. Paxton*, 140 S.W.3d 226 (Mo.App.2004). In describing the factual background necessary to dispose of this post-conviction motion, we borrow freely from our opinion on the direct appeal without any further attribution.

On the weekend of May 18–19, 2002, H.T. ("Victim"), age six, and her half-sister, S.T., were staying at the home of S.T.'s paternal grandmother ("Grandmother"). At that time, Grandmother lived in a trailer with M.B. ("Marty"), her boyfriend, and F.G. ("Frank"), her roommate and co-worker. Occasionally C.G., a teenager with family problems, would also stay at that trailer.

Movant, who also worked with Grandmother and Frank, visited the trailer on Saturday, May 18, 2002, and drank alcohol throughout the day. That evening, Grandmother put Victim and S.T. to bed on a fold-out bed in the living room. Grandmother and Marty went to bed in Grandmother's room, and C.G. slept on a couch in the living room. When Frank was preparing for bed, he told Movant to spend the night at the trailer because Movant was intoxicated and should not be driving. Frank then retired to his own bedroom for the evening.

At some point in the evening, S.T. woke up and climbed onto the sofa with C.G. Early the next morning, Frank woke up and went into the kitchen to make coffee. As he passed the living room, Frank noticed that S.T. was on the sofa with C.G., and Movant was on the fold-out bed with Victim. Frank prepared the coffee, smoked a cigarette, and returned to his bed.

When Frank woke up later, Grandmother asked him where Movant was. Frank saw that Movant was no longer on the fold-out bed and told Grandmother that Movant must have left the trailer. That afternoon, Grandmother took Marty to work. While she was gone, M.D. ("Mother"), Victim's and S.T.'s mother, and her husband arrived at the trailer to pick up the girls. Inside the trailer, according to Mother's trial testimony, Victim told Mother and her husband that someone had pulled down her panties and *touched* her private parts; however, Victim was unable

---

1. All references to rules are to Missouri Court Rules (2006), and all references to statutes are to RSMo 2000, unless otherwise indicated.

2. Having been found to be a prior sexual offender under chapter 566, Movant was subject to enhanced punishment pursuant to § 566.067.2. *State v. Paxton*, 140 S.W.3d 226, 231 (Mo.App.2004).

to remember his name. Mother started naming people who had been at the trailer the night before, and when she mentioned Movant's name, Victim said that was the man. This conversation took place in the living room. Frank, the only other occupant of the trailer at this time, was sitting in the kitchen. Following Mother's report to the police of these events, Movant was arrested, incarcerated, and charged with child molestation.

The next day, a Monday, Frank reported for work. Movant, being incarcerated, did not. Lois Stenblom, Movant's supervisor at work, inquired of Frank as to Movant's absence. In response, Frank related the events of the preceding day to her and another co-worker, Richard Fortune, who was also Stenblom's living partner. According to Stenblom and Fortune, Frank related to them that:

> [W]hen the mother came to pick up the little girl, she told her that someone had touched her. And the little girl's response was Marty did it. And the mother replied, "You don't mean Marty? That's grandma's boyfriend." And then he said that's all that he heard, and she took the little girl out.

During the following month, assistant public defender Cristie Meadows represented Movant before and during his preliminary hearing on the charge. Within one or two days following the preliminary hearing, Meadows dictated a memo to her file regarding the preliminary hearing and made the following note, among others:

> One of [Movant's] co-workers named Frank supposedly overheard [Victim] talking with [Grandmother] and she told [Grandmother] that Marty had touched her. Marty is grandma's boyfriend. [Grandmother] said to [Victim], "now that's grandma's boyfriend. He wouldn't do something like that."

Frank was at the prelim [sic] and told me this beforehand.

Following the preliminary hearing, assistant public defender Michelle Tobin was assigned to represent Movant in preparation for and through trial on the charge. Before trial, Tobin became aware of and talked to Stenblom and Fortune about their potential testimony regarding the alleged statement made by Frank and their availability to testify at trial. Tobin was also aware of the contents of Meadows' memo and the alleged statement made by Frank to Meadows.

At the trial, Frank testified that he could only partially hear what was being said in the living room. His description for the jury of what he overheard was as follows:

> I was sitting in the kitchen. I'm hard of hearing in my left ear. I was in the kitchen. I was drinking. Everything was fine, and then when they came in and [Victim] was there, they were sitting on the couch and [Victim] started proceeding to say this person was pulling down her pants and things like that, and I just got really distraught. I said "Oh, my God, what's going on here," and I heard Marty's name mentioned twice, Marty, Marty. I was so distraught. What it was is Marty's friend, and they came in the kitchen just all over me, and I was so distraught. I mean I couldn't even think of [Movant's] name, and they said "The guy that was sitting in that chair by the patio,", or who was in the kitchen where [Movant] was sitting by the patio door, and I was on this—on the same chair, and I—[Movant], the one with the earring in his—in his eye and ear—well, an earring, an earring in this eye, what do you call them?

During cross examination, the following exchange occurred between Frank and Movant's trial counsel:

Q: And, you heard Marty's name mentioned twice—

A: —twice, but came out to be it was Marty's friend.

Q: Right, that's the conclusion you got to, but when you were hearing that conversation and getting upset, you heard the name Marty twice, correct?

A: Yes.

Movant's trial counsel made a conscious, strategic decision not to ask Frank on his cross examination about the statements he allegedly made to Stenblom, Fortune, and Meadows.

Following his conviction by the jury and affirmance of that conviction on direct appeal, Movant filed his *pro se* motion for post-conviction relief. Counsel was appointed and filed an amended motion. The amended motion alleged that Movant was denied effective assistance of trial counsel because reasonably competent counsel would have asked Frank about the statement he made to Stenblom and Fortune and the statement he made to Meadows, and if he denied either one, then called that witness to testify at trial.

The motion court held an evidentiary hearing on the amended motion. Following this hearing, the motion court denied the motion, concluding that Movant's trial counsel was not ineffective for failing to cross examine Frank about his alleged statements to Meadows, Stenblom, and Fortune. The motion court supported this conclusion with two alternate and independent findings of fact: First, that trial counsel's failure to inquire was reasonable trial strategy; and, second, that such statements, even if elicited by trial counsel, would have been cumulative to other evidence of inconsistent statements made by Victim. This appeal followed.

2) *Standard of Review*

■ This Court reviews a motion court's judgment overruling a post-con-

viction motion for clear error. Rule 29.15(k); *Morrow v. State,* 21 S.W.3d 819, 822 (Mo. banc 2000). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Id.* The motion court's findings of fact and conclusions of law are presumed to be correct. *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991).

*Edwards v. State,* 200 S.W.3d 500, 509 (Mo. banc 2006).

3) *Legal Principles Involved*

■ To prove ineffectiveness of trial counsel, the movant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the movant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Bucklew v. State,* 38 S.W.3d 395, 397 (Mo. banc 2001). To prove prejudice, the movant must show a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Lyons v. State,* 39 S.W.3d 32, 36 (Mo. banc 2001). "If the movant fails to satisfy either the performance or the prejudice prong of the test, then we need not consider the other and his claim of ineffective assistance of counsel must fail." *Anderson v. State,* 66 S.W.3d 770, 775 (Mo.App.2002).

■ A movant has the burden of proving grounds for relief by a preponderance of the evidence. *State v. Kreutzer,* 928 S.W.2d 854, 877 (Mo. banc 1996); Rule 29.15(i). Moreover, actions that constitute sound trial strategy are not grounds for ineffective assistance claims, and this Court presumes that any challenged action was a part of counsel's sound trial strategy and that counsel made those decisions in the exercise of reasonable professional

judgment. *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052. Likewise, "[f]ailing to present cumulative evidence is not ineffective assistance of counsel." *Bucklew*, 38 S.W.3d at 401 (quoting *State v. Johnston*, 957 S.W.2d 734, 755 (Mo. banc 1997)).

### 4) *Discussion*

 The only ruling of the motion court challenged by Movant in his sole point relied on is the motion court's general denial of his amended motion. Movant makes no explicit reference in his brief to any particular finding of fact or conclusion of law by the motion court. Movant completely fails to identify any specific finding or conclusion of the motion court which he claims is clearly erroneous. We are able to infer from Movant's argument portion of his brief discussing trial strategy that Movant is urging us to find the motion court's finding that trial counsel's actions were sound trial strategy clearly erroneous. However, Movant's brief is totally void of any argument, citation to authority or even the barest mention as to whether the statements Movant claims should have been elicited by trial counsel were not cumulative evidence as found by the motion court. Before we address the former, we must consider the effect, if any, of the latter.

The motion court is required to make findings of fact and conclusions of law "on all issues presented, whether or not a hearing is held." Rule 29.15(j). These findings and conclusions "must be sufficiently specific to allow meaningful appellate review." *Edwards*, 200 S.W.3d at 513 (quoting *Barry v. State*, 850 S.W.2d 348, 350 (Mo. banc 1993)). This enables us to carry out our function under Rule 29.15, in that appellate review "shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k). As a prerequisite to that appellate review claims of error must be raised and argued by the Appellant in its initial brief because "allegations of error not briefed ... shall not be considered in any civil appeal." Rule 84.13(a).[3]

Here, we are presented with alternate findings of fact by the motion court each of which, independent of the other, would support the conclusion of law by the motion court that trial counsel was not ineffective. *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052; *Bucklew*, 38 S.W.3d at 401. One of those findings—that trial counsel was acting within a reasonable trial strategy—is challenged on appeal as being clearly erroneous by Movant in his brief. The other—that the statements, even if elicited by trial counsel, would have been cumulative—is not mentioned in Movant's brief and, therefore, remains unchallenged by Movant in this appeal. In such a situation, we need not reach the issue of whether the challenged finding is clearly erroneous because the unchallenged finding is independently sufficient to support the denial of Movant's motion for post-conviction relief by the motion court. *See Johnson v. State*, 4 S.W.3d 154, 157 (Mo.App.1999). Movant's point on appeal is denied.

### 5) *Decision*

The judgment of the motion court denying Movant's Rule 29.15 motion for post-conviction relief is affirmed.

BATES, P.J., C.J., and BARNEY, J., concur.

---

**3.** "The procedure to be followed for motions filed pursuant to this Rule 29.15 is governed by the rules of civil procedure insofar as applicable." Rule 29.15(a); *See Edwards v. State*, 200 S.W.3d 500, 515 (Mo. banc 2006).